IN THE MATTER OF LAWRENCE P. BRADY, JR., AN ATTORNEY-AT-LAW.

Argued October 24, 1973—Decided December 12, 1973.

*Mr. Paul M. Hanlon* argued the cause for the Hudson County Ethics Committee.

*Mr. Gerald D. Miller* argued the cause for respondent (*Messrs. Miller, Hochman, Meyerson and Miller,* attorneys).

PER CURIAM. The Hudson County Ethics Committee found respondent Lawrence P. Brady, Jr. guilty of having violated two disciplinary rules of the Code of Professional Responsibility, namely, DR9–101(C) by indicating or implying to his client that he was able to influence improperly a public official, and DR9–102(B)(4) by failing to pay or deliver to his client funds she had entrusted to him.

The Committee conducted a two-day hearing on charges made by Mrs. Carol Novak at which respondent was represented by counsel. Mrs. Novak testified that on or about March 2, 1971, accompanied by her father, Edward Lodge, she consulted with respondent and asked him to represent her in the event she was locked up by the Union City police. She told him she had been harassed and threatened with arrest because of her association with one J. F., who had been involved in the armed robbery of a travel service agency. It appeared that sometime after the robbery she had driven J. F. to Newark where he had attempted to cash stolen

traveler's checks. She also told respondent that she had sold a motor vehicle to Lee Motors of Fort Lee for $1,400 and that Lee Motors had stopped payment of the check at the request of the police because it was suspected that she had purchased the vehicle with funds derived from the robbery. Respondent agreed to represent Mrs. Novak in the event of her arrest and to endeavor to obtain release of the $1,400.

During this first interview respondent received $1,000 in cash from Mrs. Novak and her father. Mrs. Novak testified it was agreed that $500 would be respondent's retaining fee and that the balance of the money was left with respondent for safekeeping because he said that if the police found them with money in their possession it would be confiscated as evidence. Respondent gave a contrary version of the agreement. He testified that the $1,000 he received was a retaining fee agreed upon by Mrs. Novak. He exhibited his office record of cash receipts in support of his contention.

Respondent testified that he thereafter telephoned Lieutenant Steinel of the Union City Police Department. Steinel indicated that Mrs. Novak was not going to be arrested but that he wanted to see her to be assured of her cooperation in their attempts to apprehend J. F. On March 4 or 5 respondent picked up Mrs. Novak in his car and drove her to the police headquarters. Mrs. Novak testified that during the trip respondent said he had to pay off the police; that they were going to release the $1,400 check and not bother her anymore. She said he did not say how much he was going to pay but $1,000 was mentioned and that she told respondent it would be stupid for her to pay $1,000 to get back her $1,400. Respondent testified that Mrs. Novak started the discussion about paying off the police and said, "I know how you guys operate". He said he told her, "I don't know what you're talking about," and denied he said that he was going to pay off the police. At police headquarters, upon receiving Mrs. Novaks promise of cooperation, Lieutenant Steinel telephoned Lee Motors and told the company it could release the $1,400.

Respondent testified that subsequently Mrs. Novak telephoned him twice claiming that he had overcharged her and asking for her money back. He admitted that he had put her off and told her to call back in a week or so. On her third telephone call he suggested that she come to his office.

On March 11 Mrs. Novak came to respondent's office with a tape recorder in her pocketbook and recorded their conversation. Respondent was unaware that she was doing so. A transcript of the recorded conversation indicates Mrs. Novak told respondent that she and her father objected to paying off the police and demanded the return of her father's $500. Respondent did not dispute her statement that the retaining fee agreed upon had been $500 or that he was holding $500 of her father's money. The tape recording indicates he told Mrs. Novak he had already paid off the police and that during the discussion he said, "You know they all want to get paid," and "you know they don't do these things — they expect it in advance and they want it after it happens"; that he also said, "I agree you gave me $1,000 but I had to spend it, I had to spread it around." He told Mrs. Novak that if he returned any money to her it would be his own. He offered to return $300 but Mrs. Novak insisted on payment of the $500. The conversation ended with respondent advising Mrs. Novak to come back to his office later in the day. Mrs. Novak complied. The conversation which followed her return was not recorded. Mrs. Novak testified that respondent repaid her only $300. Respondent claimed that he returned the original $500 which he had kept in a filing cabinet since their first meeting.

On May 4 Mrs. Novak informed respondent she had taped their conversation of March 11 and demanded that he return more money. When he refused she turned the tape over to the Hudson County Prosecutor's office. The tape and a transcript of the recorded conversation were subsequently reviewed by the Ethics Committee during the hearing on the charge of respondent's misconduct.

During his testimony before the Committee respondent admitted that the tape recording appeared to be a segment of the conversation he had with Mrs. Novak. He stated that he did not recall making some of the statements and did not know whether he had made others. However, he did not specifically deny making the statements recorded on the tape.

No evidence was presented to the Committee which indicated that the police had been "paid off" or that respondent made any overtures to do so. However, it is clear that respondent violated DR9–101(C) by indicating and implying to his client that he was able to influence improperly the police officers of Union City.

The presentment of the Ethics Committee makes no express finding of fact as to the disputed issues of whether the entire $1,000 or only part thereof was to be in payment of respondent's retainer and how much money was returned by respondent to Mrs. Novak. However, at oral argument counsel for the Committee informed us that the Committee had resolved both issues in favor of Mrs. Novak's version of the facts. We are convinced from our review of the record that respondent violated DR9–102(B)(4) by improperly withholding and failing to promptly pay to his client funds in his possession which the client was entitled to receive.

Respondent is a young lawyer having been admitted to the bar in 1965. He was employed in the Hudson County Prosecutor's office until September 1, 1970 when he left to engage in the private practice of law. His violation of the disciplinary rules occurred seven months later. We are advised that both before and after the incident involved he had an unblemished record. Considering all the circumstances, it is our judgment that respondent be suspended from the practice of law for six months and until further order of this Court.

*For suspension for six months*—Justices JACOBS, HALL, PASHMAN and CLIFFORD and Judges CONFORD and COLLESTER—6.